UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

MICHAEL DAVIS                                :
                                             :
              v.                             :        C.A. No. 15-153M
                                             :
CAROLYN COLVIN                               :
Commissioner of the Social Security          :
Administration                               :

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g).  Plaintiff filed his Complaint on April 17, 2015 seeking to reverse the decision of the Commissioner.  On August 31, 2015, Plaintiff filed a Motion for Order Reversing Decision of the Commissioner.  (Document No. 13).  On November 5, 2015, the Commissioner filed a Motion for an Order Affirming the Decision of the  Commissioner. (Document No. 18).  Plaintiff filed a Reply Brief on November 20, 2015.  (Document No. 19).

This matter has been referred to me for preliminary review, findings and recommended disposition.  28 U.S.C. § 636(b)(1)(B); LR Cv 72.  Based upon my review of the record, the parties' submissions and independent research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that the Commissioner's Motion (Document No. 18) be GRANTED and that Plaintiff's Motion (Document No. 13) be DENIED.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for DIB on November 28, 2012 alleging disability since September 30, 2011. (Tr. 147-150). Plaintiff's date last insured for DIB is March 31, 2012. (Tr. 85). The Application was denied initially on February 6, 2013 (Tr. 79-84) and on reconsideration on October 16, 2013. (Tr. 86-96). Plaintiff requested an Administrative hearing. On May 6, 2014, a hearing was held before Administrative Law Judge Gerald Resnick (the "ALJ") at which time Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified. (Tr. 50-78). The ALJ issued an unfavorable decision to Plaintiff on June 9, 2014. (Tr. 30-45). The Appeals Council denied Plaintiff's request for review on January 16, 2015. (Tr. 6-8). After considering additional information, on February 11, 2015, the Appeals Council again denied Plaintiff's request for review. (Tr. 1-3). Therefore the ALJ's decision became final. A timely appeal was then filed with this Court.

## II.    THE PARTIES' POSITIONS

Plaintiff argues that the ALJ improperly assessed the evidence of record and issued a flawed RFC finding. He also argues that the ALJ failed to properly assess his credibility and erred by not providing any DOT codes in his decision.

The Commissioner disputes Plaintiff's claims and contends that the ALJ's findings are supported by substantial evidence and that the failure to provide specific DOT codes is not reversible error under these circumstances.

## III.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and

Human Servs., 955 F.2d 765, 769 (1ˢᵗ Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1ˢᵗ Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1ˢᵗ Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11ᵗʰ Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1ˢᵗ Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11ᵗʰ Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1ˢᵗ Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11ᵗʰ Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1ˢᵗ Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6ᵗʰ Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5ᵗʰ Cir. 1980) (remand

appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains

jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

## IV.    THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R § 404.1527(c).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(c)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner.  20 C.F.R. § 404.1527(e).  See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B.      Developing the Record**

The ALJ has a duty to fully and fairly develop the record.    Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists

-6-

if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.     Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D.     The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing

other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f).
Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner
bears the burden at step five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step
process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe,
the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any
medically severe combination of impairments throughout the disability determination process.  42
U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to
the effect of a combination of impairments when determining whether an individual is disabled.  Davis
v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by
the Social Security Act.  Seavey, 276 F.3d at 5.  The claimant must prove disability on or before the
last day of her insured status for the purposes of disability benefits.  Deblois v. Sec'y of Health and
Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c).  If a claimant becomes
disabled after she has lost insured status, her claim for disability benefits must be denied despite her
disability.  Id.

### E.     Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts
to the Commissioner to establish that the claimant could perform other work that exists in the national
economy.  Seavey, 276 F.3d at 5.  In determining whether the Commissioner has met this burden, the
ALJ must develop a full record regarding the vocational opportunities available to a claimant.  Allen
v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through

exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.    Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including

pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

    (1)    The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

    (2)    Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

    (3)    Type, dosage, effectiveness, and adverse side-effects of any pain medication;

    (4)    Treatment, other than medication, for relief of pain;

    (5)    Functional restrictions; and

    (6)    The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

**2.**    **Credibility**

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.    APPLICATION AND ANALYSIS

Plaintiff was fifty-six years old on the date of the ALJ's decision. Plaintiff has an ninth grade education (Tr. 176) and worked in the past as a custodian. (Tr. 177). Plaintiff last worked on December 16, 2006. (Tr. 176). He retired after a thirty-two year career as a custodian and collects a pension. (Tr. 54-55). Plaintiff alleges disability due to anxiety, depression, insomnia, tinnitus, migraines, high cholesterol and high blood pressure. (Tr. 79).

Plaintiff saw his primary care provider, Dr. Claude Younes, on September 13, 2011 reporting that he was doing well. (Tr. 265). On October 20, 2011, Plaintiff returned to Dr. Younes reporting congestion and headache starting two weeks before. (Tr. 264). Dr. Younes assessed sinusitis and prescribed Allegra. Id. On November 1, 2011, Dr. Younes noted that Plaintiff was again doing well; examination of the head, eyes, ears, nose and throat was "[n]ormocephalic, atraumatic. No point tenderness." (Tr. 263). Dr. Younes ordered a sinus x-ray for frontal headaches and sinusitis, which showed no evidence of paranasal sinus disease. (Tr. 252).

On November 8, 2011, Plaintiff returned to Dr. Younes reporting only a headache on and off when under stress or anxious. (Tr. 262). On November 22, 2011, Plaintiff told Dr. Younes that he was doing well, with occasional headaches. Id. On February 1, 2012, Dr. Younes first noted Plaintiff's

complaint of "increased ringing in both ears with amplification of voice, [Plaintiff] is becoming very agitated and anxious due to the symptomatology which is becoming unbearable." (Tr. 261). Dr. Younes assessed a new diagnosis of tinnitus and referred Plaintiff for a CT scan and to an ear, nose and throat ("ENT") specialist. Id.

On January 6, 2012, Dr. Richard Iacobucci noted that Plaintiff had completed a carotid artery and a stress test, both of which were normal; laboratory blood studies were also normal. (Tr. 323). Dr. Iacobucci administered a stress/echo test on February 6, 2012, which was negative, and a carotid artery study that day, which showed no evidence of significant plaque formation or obstructive disease. (Tr. 317). A February 2, 2012 head CT scan showed no acute intracranial abnormality. (Tr. 250-251).

Plaintiff saw Dr. Anthony Barone on February 7, 2012, reporting a two- to three-month history of blockage sensation in his right ear. (Tr. 234). On examination, Dr. Barone observed no visible lesions and patent ear canals, among other negative findings. Id. Dr. Barone conducted audiology studies that were essentially within normal limits, with only mild symmetrical high frequency sensorineural hearing loss. (Tr. 234, 236).

On February 9, 2012, Plaintiff returned to Dr. Younes reporting that he was doing better; he had been seen by cardiology and ENT, and their workup was negative. (Tr. 260).

Plaintiff initiated treatment for tinnitus with Dr. Albert Marano on May 24, 2012, reporting that he began to develop bilateral ear tightness and pressure in September 2011. (Tr. 243). Objective physical examination was generally normal. (Tr. 243-244). Dr. Marano assessed tinnitus and placed Plaintiff on a twelve-day tapering course of Prednisone. (Tr. 244). On July 12, 2012, comprehensive otolaryngology and cardiac evaluations, as well as a systemic workup including thyroid studies and Lyme titer, were negative or within normal limits. (Tr. 242). Physical objective examination was

again generally normal.  Id.  Dr. Marano noted that "[w]e haven't yet got to the etiology of [Plaintiff's]

persistent/refractory tinnitus," and that "[w]e are compelled to proceed with an MRI of the brain."  Id.

A July 24, 2012 brain MRI was normal.  (Tr. 237).

On August 16, 2012, Plaintiff told Dr. Younes that he was having anxiety attacks and

insomnia; he was "under a lot of stress and pressure due to family issues."  (Tr. 259).

On November 12, 2012, Dr. Younes noted Plaintiff's complaint of continued headache,

anxiety, dizziness, insomnia and ringing in his ears; Plaintiff was so frustrated with his condition that

he was becoming more depressed.  (Tr. 258).

Plaintiff was evaluated by a psychologist, Francis R. Sparadeo, Ph.D., on November 21, 2012.

(Tr. 281).  Plaintiff reported tinnitus, a blocked sensation in his ears, pressure behind his ears, and

excessive worry, as well as feeling depressed and highly anxious with occasional panic attacks, for the

last fourteen months.  Id.  Plaintiff reported fear and anxiety; low mood with pessimism, loss of

self-confidence and reduced social contact.  Id.  Dr. Sparadeo stated that "the presence of anxiety and

now depression more than likely magnifies the symptoms he experiences. Certainly anxiety and

depression is well known to magnify tinnitus."  (Tr. 281-282).

On December 21, 2012, Dr. Sparadeo performed a psychological examination.  (Tr. 334-337).

Plaintiff reported a history of anxiety for about a year, related to the pressure and tinnitus in his ears.

(Tr. 334).  The problem with his ears kept him awake at night, sometimes leaving him fatigued,

irritable and angry.  Id.  Dr. Sparadeo concluded that Plaintiff was feeling a loss of control, due to his

ear problems, that created excessive worry and fear with a feeling of constant anxiety.  (Tr. 336).  Dr.

Sparadeo thought Plaintiff seemed to be obsessing over the changes that were occurring in his ears.

Id.

When Plaintiff returned to Dr. Marano on March 15, 2013, he reported that, in addition to tinnitus and anxiety, he was also experiencing daily tenderness due to tendinitis, as well as hand paresthesias.  (Tr. 284).  His anxiety had not improved, and he was becoming more short-tempered. Id.  On July 25, 2013, Dr. Marano observed that "[t]his has become a difficult management case.  We believe that his symptomatology does relate to his anxiety."  (Tr. 326).

On October 1, 2013, on reconsideration of the initial denial of Plaintiff's DIB application, State agency reviewing psychologist Clifford Gordon, Ed.D., reviewed Plaintiff's claim file to date and assessed him with mild restriction of activities of daily living, moderate restrictions in social functioning and in concentration, persistence, or pace, and no extended episodes of decompensation. (Tr. 92-93).  Dr. Gordon further assessed Plaintiff's mental RFC for the time period at issue (Tr. 86), stating that he could "understand and remember basic tasks in the workplace [though] [h]e will be unable to understand and remember complex, abstract tasks;" he could "interact adequately with coworkers and supervisors if contact is minimal, superficial in nature [but] will be unable to relate adequately though with the public;" and could "follow through on basic tasks, not complex abstract tasks in the workplace [and] can adapt to ordinary changes in the work environment."  (Tr. 93-95). Also on reconsideration, State agency reviewing physician Henry Laurelli, M.D., concluded that Plaintiff had no severe physical impairment during the relevant period.  (Tr. 91, 92).

On April 15, 2014, Dr. Sparadeo completed a Supplemental Questionnaire as to Residual Functional Capacity form indicating that Plaintiff had severe limitations in his abilities to respond to customary work pressures and to perform complex or varied tasks, with moderately severe restriction of his daily activities and constriction of interests and moderately severe limitations in his abilities to

respond appropriately to supervision, perform simple tasks and perform repetitive tasks. (Tr. 328-329). Dr. Sparadeo believed that the suggested limitations were present prior to March 31, 2012. (Tr. 329).

On April 23, 2014, Dr. Sparadeo submitted a combined treatment note for January 13, 2014; March 18, 2014; April 14, 2014 and April 22, 2014 indicating that Plaintiff "remains disabled by his anxiety and the constant pressure in his ears but he seems to be coping better." (Tr. 330).

On April 24, 2014, Plaintiff saw Dr. Stephen Saris, a Neurosurgeon who had performed his microdiskectomy seven years before (Tr. 295-296), with a complaint of low back pain. (Tr. 339-340). Plaintiff reported that he continued to have achiness of his back for several years after the surgery; about four months before, he had a spontaneous worsening of that discomfort. (Tr. 340).

On April 25, 2014, Plaintiff saw Dr. Joseph Izzi with complaints of left elbow pain. (Tr. 346). Dr. Izzi diagnosed left lateral epicondylitis, mild cubital tunnel syndrome and mild bilateral carpal tunnel syndrome. (Tr. 347).

On April 28, 2014, Dr. Marano completed a Physical Capacity Evaluation indicating that Plaintiff could only sit for twenty minutes and stand or walk for thirty minutes each out of an eight-hour workday; sit and stand in combination for one hour before needing to lie down; frequently lift and/or carry up to ten pounds but never more; use either hand for fine manipulation but only his right hand for reaching or pushing/pulling, and never use either hand for simple grasping; occasionally bend, squat, kneel and crawl; he could tolerate occasional exposure to moving machinery, noise and vibration, extreme temperatures and dust, fumes, or gas but never to unprotected heights. (Tr. 342-343). Dr. Marano did not know if these limitations were present prior to March 31, 2012. (Tr. 343). Dr. Marano also completed a Pain Questionnaire indicating that Plaintiff had moderate pain that was sufficiently severe to preclude the sustained concentration and productivity needed for full-time

employment; that he would be off-task for at least one hour out of an eight-hour workday; and that he would likely be absent more than four days per month.  (Tr. 344).

On May 9, 2014, Dr. Younes provided Plaintiff's counsel with a letter stating that Plaintiff began experiencing severe tinnitus, dizziness and insomnia in February 2012, along with increased anxiety.  (Tr. 348).  Dr. Younes also provided a Physical Capacity Evaluation indicating that Plaintiff could sit for eight hours and stand/walk five hours each out of an eight-hour workday; lift twenty pounds frequently and up to twenty-five pounds occasionally; carry up to ten pounds frequently; repetitively perform simple grasping, reaching, pushing and pulling and fine manipulation with both arms/hands; frequently bend, squat and kneel and occasionally crawl; and tolerate occasional exposure to moving machinery, noise and vibration, extreme temperatures and dust, fumes and gas, but never to unprotected heights.  (Tr. 350).  Dr. Younes believed these limitations were present since February 1, 2012.  Id.

### A.    The ALJ's Decision

The ALJ decided this case adverse to Plaintiff at Step 4 and, alternatively, at Step 5.  (Tr. 43-45).  At Step 2, the ALJ found that Plaintiff's anxiety and depression were "severe" impairments as defined in 20 C.F.R. § 404.1520(c).  (Tr. 35).  However, at Step 3, the ALJ concluded that Plaintiff's impairments, either singly or in combination, did not meet or medically equal any of the Listings.  (Tr. 36).  The ALJ determined that Plaintiff, through March 31, 2012 (his date last insured for DIB), had the RFC to perform a full range of work at all exertional levels with nonexertional limitations to simple work, limited social interaction with coworkers and no interaction with the public.  (Tr. 37).  Based on this RFC and opinion testimony of the VE, the ALJ concluded at Step 4 that Plaintiff could perform his past work as a custodian as generally performed, and, alternatively at Step 5, that Plaintiff could

perform other unskilled jobs existing in substantial numbers.  (Tr. 45).  Thus, the ALJ determined that

Plaintiff was not disabled during the relevant period from alleged onset, September 30, 2011, to his

date last insured, March 31, 2012.  Id.

**B.      Plaintiff Has Shown No Error in the ALJ's Assessment of the Medical Evidence
of Record**

Plaintiff contends that the ALJ gave inadequate weight to the opinions expressed by his treating

sources and too much weight to the opinions of "a mere state agency reviewing physician and

psychologist."  (Document No. 13 at pp. 8-12).  He also argues that the ALJ failed to apply the

"reasonable inference" standard under Social Security Ruling 83-20.  Id. at pp. 6-7.

The ALJ based his RFC assessment on the opinions of Dr. Laurelli and Dr. Gordon.  (Tr. 42).

He gave their opinions "substantial weight" because they were consistent with, and well supported by,

the longitudinal record.  Id.  On October 15, 2013, Dr. Laurelli opined, based on his review of the

medical records, that Plaintiff had no severe medical impairments either prior to or after his date last

insured (March 31, 2012).  (Tr. 91).  Also, on October 1, 2013, Dr. Gordon opined that Plaintiff's

anxiety and depression resulted in only a mild limitation in activities of daily living; a moderate

limitation in social functioning; and a moderate limitation in concentration, persistence and pace.  (Tr.

92).  It is undisputed that the ALJ's RFC assessment is based upon those medical opinions.

On the other hand, the ALJ gave minimum probative weight to the opinions of Dr. Younes,

Dr. Marano and Dr. Sparadeo.  (Tr. 42-43).  He noted that the assessments of Dr. Marano and Dr.

Sparadeo were unsupported prior to the date last insured since neither treated Plaintiff prior to March

31, 2012. (Tr. 40, 43).  Also, the ALJ noted that Dr. Younes' assessment was generally consistent with

light work, and he opined that Plaintiff's symptoms commenced in February 2012. (Tr. 40, 42 and Ex. 19F).

First, as to SSR 83-20, it deals with the process of determining an onset date when disability has been found. For instance, SSR 83-20 explains that "[d]etermining the proper onset date is particularly difficult...when the alleged onset and the date last worked are far in the past and adequate medical records are not available" and thus it is "necessary to infer the onset date" from the medical evidence. In such cases, SSR 83-20 provides that the ALJ "should call on the services of a medical advisor when onset must be inferred."

Here, the ALJ was not faced with the task of establishing an onset date because he concluded that Plaintiff was not under a disability at any time prior to his March 31, 2012 date last insured. See Lisi v. Apfel, 111 F. Supp. 2d 103, 111 (D.R.I. 2000); and Sousa v. Astrue, C.A. No. 08-218, 2009 WL 3401196 at *9 (D.R.I. Oct. 21, 2009). Thus, SSR 83-20 was inapplicable, and Plaintiff can show no violation of its requirements warranting remand. Second, as to the competing medical opinions, Plaintiff argues that "the ALJ has no bases, other than his own impermissible estimations, upon which to reasonably reject the[ ] treating source opinions" of Drs. Younes, Marano and Sparadeo. (Document No. 19 at p. 6).

Because a treating physician is typically able to provide a detailed longitudinal picture of a patient's's impairments, an opinion from a treating source is generally entitled to considerable weight if it is well supported by clinical findings and not inconsistent with other substantial evidence of record. 20 C.F.R. § 404.1527(d); see also Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass. 2002) (The ALJ "may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors").

-18-

The amount of weight to which a treating source opinion is entitled depends in part on the length of the treating relationship and the frequency of the examination. 20 C.F.R. § 404.1527(d)(1). If the treating physician's opinion is not given controlling weight, the opinion must provide "good reasons" for the level of weight given. 20 C.F.R. § 404.1527(d)(2).

In this case, the ALJ thoroughly discusses the medical evidence and gives good reasons for his conclusions which are supported by the record. (Tr. 37-43; see also Tr. 62-64). Plaintiff's date last insured is March 31, 2012 and thus, both Dr. Laurelli and Dr. Gordon had full medical records for the relevant period when they rendered their opinions in 2013. Neither Dr. Marano nor Dr. Sparadeo treated Plaintiff during the relevant period. Accordingly, the ALJ had good reason for questioning their ability to opine on a period of time when they did not treat Plaintiff. While Dr. Younes had a long-term treating relationship with Plaintiff, the ALJ accurately observed that his treatment records did not support his May 9, 2014 opinions. Dr. Younes opined in 2014 that Plaintiff's limitations were present since February 1, 2012, and that Plaintiff began experiencing severe tinnitus, dizziness and insomnia at that time and increasing anxiety due to these episodes. (Ex. 19F). However, Dr. Younes' treatment notes of February 9, 2012 actually indicate that Plaintiff was "doing better," "no dizziness reported" and that cardiology and ENT workups were negative. (Tr. 260). There is no mention of anxiety, depression or any mental status abnormalities at that time. Plaintiff was not treated again by Dr. Younes until August 16, 2012 – over six months from his last appointment and nearly five months after his date last insured. (Tr. 259). At that time, Plaintiff's chief complaints were anxiety and insomnia, and he reported being under a lot of stress and pressure due to family issues. Id. There is no mention of tinnitus or any other physical or mental abnormalities. Id. Thus, there is substantial evidence in the record supporting the ALJ's conclusion that Dr. Younes' opinions were not supported

-19-

by, or consistent with, the record.  (Tr. 42).  Finally, Dr. Younes' treatment notes were reviewed by both Dr. Gordon and Dr. Laurelli when they opined in 2013 that Plaintiff's impairments were not disabling on any date through March 31, 2012. (Ex. 3A).  Under the applicable regulations, the expert opinions of such medical experts may amount to substantial evidence where, as here, they represent a reasonable reading of the entirety of the relevant medical evidence.  20 C.F.R. §§ 404.1527(e) and 416.927(e).  Even in cases where there are contrary opinions by treating sources, the ALJ may nonetheless assign greater weight to the opinion of a reviewing physician, so long as the ALJ articulates an adequate and supported basis for doing so.  Arroyo v. Sec'y of HHS, 932 F.2d 82, 89 (1st Cir. 1991).  The ALJ has adequately done so here.

While reasonable minds may differ as to the interpretation of this medical evidence, the issue presented in this administrative appeal is not whether this Court would have reached the same conclusion as did the ALJ.  The ALJ's resolution of evidentiary conflicts must be upheld if supported by substantial evidence, even if contrary results might have been tenable also."  Benetti v. Barnhart, 193 Fed. Appx. 6, 2006 WL 2555972 (1st Cir. Sept. 6, 2006) (per curiam) (citing Rodriguez-Pagan v. Sec'y of HHS, 819 F.2d 1 (1st Cir. 1987)).  Rather, the narrow issue presented is whether the ALJ's findings have adequate support on the record.  The ALJ's decision to afford substantial evidentiary weight to the opinions of Dr. Gordon and Dr. Laurelli was proper, as the ALJ found their opinions to be consistent with the record as a whole, and his conclusions are supported by substantial evidence. Plaintiff has shown no error.

### C.    Substantial Evidence Supports the ALJ's RFC Finding

Plaintiff contends that the ALJ's RFC findings are flawed because they are, in part, not expressed in work-related terms and because they fail to incorporate all of the limitations assessed by

-20-

Dr. Gordon.  Both arguments are easily dispatched.  First, the only portion of the RFC that Plaintiff challenges as not expressed in work-related terms is the limitation to "no close interpersonal interaction with co-workers."  (Tr. 37).  However, this limitation is plainly work-related.  <u>See</u> 20 C.F.R. § 404.1545(c) (The assessment of RFC includes consideration of whether a "limited ability to carry out certain mental activities, such as...responding appropriately to supervision [and] co-workers...may reduce [the] ability to do past work and other work.").  Furthermore, the VE, testifying in his capacity as an expert witness (20 C.F.R. § 404.1560(b)(2)), did not express any difficulty in understanding the limitation when presented to him in the ALJ's hypothetical question.  (Tr. 71-72).  In addition, Plaintiff's counsel did not challenge the limitation in any way during the hearing and declined the opportunity to question the VE.  (Tr. 75).  The ALJ properly relied upon the VE's unambiguous testimony.

Second, as to Dr. Gordon's opinion, the ALJ accurately incorporated his assessed limitations into the ultimate RFC finding.  (Tr. 37)  In his report, Dr. Gordon concluded each section with a narrative summary of Plaintiff's functional limitations.  (Tr. 94-95).  Since the ALJ's RFC assessment is based upon a reasonable interpretation of such narratives, it is supported by substantial evidence and entitled to deference.

### D.    Plaintiff Has Shown No Step 4 or Step 5 Error

Plaintiff faults the ALJ for not providing DOT codes for the work (past and other) that he found Plaintiff was capable of performing.  First, the ALJ's Step 4 finding is based upon unequivocal testimony from the VE that someone with Plaintiff's RFC could generally perform his past work as a janitor but not in the college environment he previously performed it.  The VE testified that Plaintiff could not perform the job "in the environment in which he worked because of the restriction on

interaction with the public" but "he could be a janitor in another place that doesn't have the kind of traffic and interaction that a college would have." (Tr. 73). Again, Plaintiff's counsel declined to further question the VE about such opinion, and Plaintiff does not argue that there was any confusion about the job in question or any dichotomy between the DOT and the VE's testimony. Thus, at worst, any error in providing the particular DOT code is harmless.

Similarly, any arguable error at Step 5 is likewise harmless in view of the alternative and supported Step 4 finding. In addition, although the Commissioner concedes that there is some ambiguity as to the applicable DOT codes for three of the "other work" positions identified by the VE, there is no such ambiguity as to the after-hours cleaner position identified by the VE. (Document No. 18-1 at p. 25, and Tr. 74-75). Plaintiff has shown no reversible error at either Step 4 or Step 5.[1]

## VI.   CONCLUSION

For the reasons discussed herein, I recommend that the Commissioner's Motion (Document No. 18) be GRANTED and that Plaintiff's Motion (Document No. 13) be DENIED. Further, I recommend that Final Judgment enter in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the

---

[1] Finally, Plaintiff's challenge to the ALJ's credibility determination is unsupported. The ALJ considered Plaintiff's subjective complaints at length, (Tr. 40-41), but found them to be not entirely credible. In so doing, the ALJ appropriately considered Plaintiff's fairly extensive daily activities (Tr. 41, 42), the absence of objective clinical or laboratory diagnostic findings supporting his physical complaints during the relevant period (Tr. 41), the absence of any treatment for back or mental health impairments prior to his loss of disability insured status, and the fact that Plaintiff was not prescribed narcotic pain medication or psychiatric medications. (Tr. 41-42). Plaintiff fails to acknowledge, much less challenge, the ALJ's proper consideration of this evidence. Instead, he simply recounts his own testimony at the administrative hearing regarding his symptoms and limitations, cursorily asserting that his testimony is consistent with the substantial evidence of record and should, therefore, have been afforded greater weight. (Document No. 13 at pp. 14-16). Plaintiff fails to identify any specific, remandable error.

District Court and the right to appeal the District Court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
January 4, 2016